Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3874 | **DATE** | 4/5/2002 |
| **CASE TITLE** | Beard vs. The Prudential Insurance Company of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies Prudential's motion for summary judgment [#13] on Count I and grants the motion on Counts II and III. This case will be called for status on April 23, 2002 at 9:30 a.m. The parties are directed to meet together in an effort to settle this case before that hearing.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 8 - 2002 date docketed | |
| | Notified counsel by telephone. | | | 38 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | 02 APR -5 PM 12:04 | 4/5/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

APR 8 - 2002

MALLORY BEARD, )
 )
    Plaintiff, )
 )
vs. ) No. 00 C 3874
 )
THE PRUDENTIAL INSURANCE )
COMPANY OF AMERICA, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mallory Beard ("Beard"), brought this lawsuit pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*, alleging in Count I that defendant, The Prudential Insurance Company of America ("Prudential"), demoted him from his sales manager position because of his age, 45, and replaced him with a younger employee, under Count II that defendant constructively discharged him from the position to which he was demoted, and under Count III, an Illinois common law claim, that defendant breached an oral promise to promote plaintiff if he met certain conditions, which conditions plaintiff fulfilled. Before the court is defendant's motion for summary judgment on all three counts. The court has jurisdiction over the ADEA claims under 28 U.S.C. § 1343 and 29 U.S.C. §§ 219 and 626, and over the common law claim under 28 U.S.C. § 1367. For the reasons set forth below, the court denies defendant's motion for summary judgment as to Count I and grants the motion as to Counts II and III.

38

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must apply the summary judgment standard with "added rigor" in employment discrimination cases, where intent is the central issue. *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 152 (7th Cir. 1994).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

In 1995, plaintiff became the managing director of Prudential's Southern Ohio insurance agency after having already worked for Prudential since 1981. While plaintiff was managing director, Prudential received complaints about plaintiff and thus undertook a "Climate

2

Assessment" or internal investigation of plaintiff's agency. Upon completion of the Climate Assessment, Prudential removed plaintiff from his managing director position. Prudential then conducted a sexual harassment investigation of plaintiff based on information received during the Climate Assessment. Prudential held several meetings in September and October of 1996 with plaintiff. Present during those meetings were Ralph Crews ("Crews"), the executive director for plaintiff's area and Ed Varcho ("Varcho"), the director of human resources. According to plaintiff, at one of these meetings, Crews promised him "if he won a citation in the next two years and did not receive any other sexual harassment complaints that he would promote [plaintiff] back into a Managing Director's position." (Beard Dep. at pp. 42-43.) At the close of the investigation, Prudential gave plaintiff a one-time final warning and presented him with several options including separation from Prudential or remaining with Prudential according to conditions set forth in a letter from Crews to plaintiff dated October 24, 1996. (See Def.'s Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue at ¶ 7.) In this letter, Crews also expressed reservations about plaintiff's "judgment, leadership, communication and team building skills." (Beard Dep. Ex. 4.)

After one year working for defendant as a consultant, Prudential found a position for plaintiff in Chicago. At a meeting in Prudential's home office in Newark, New Jersey in October 1997, plaintiff, Crews, Varcho and Jay J. Melquist, the senior vice president for retail distribution, discussed their options again, including plaintiff's separation from Prudential. Plaintiff contends that Crews reiterated his promise at this meeting. (Beard Dep. at pp. 53, 55). Plaintiff signed a statement made on or about October 24, 1997 upon acceptance of the transfer in which he acknowledged that he would "be evaluated based on [his] performance versus other

Field Directors for future opportunities" and that "the compensation plan did not represent a guarantee of employment now or in the future." (Beard Dep. Ex. 3.) Plaintiff knew that his contract could be terminated by Prudential at any time or that he could resign and quit at any time. (Beard Dep. at p. 12.) After the meeting in Newark, Prudential offered plaintiff a sales manager position.

Plaintiff then moved to Chicago and began working as a sales manager with one of Prudential's agencies, the LSX agency, in December 1997. At that time, Marjorie Cantin ("Cantin"), whose date of birth is August 3, 1948, was the managing director of the LSX agency. She and plaintiff had previously worked together: When plaintiff first became managing director of Prudential's Southern Ohio agency, Cantin was the executive director for the area at that time. Cantin had agreed to give plaintiff a second chance.

As a sales manager, plaintiff was responsible for selecting, hiring and retaining new agents and supervising, coaching, mentoring and performing joint work with his agents. In 1998, Prudential awarded plaintiff a citation, which generally indicates good performance with respect to productivity and sales. (Crews Decl. ¶ 5.)

In late 1998 and early 1999, in a nationwide downsizing, Prudential merged various agencies and offices. As part of the reorganization, Prudential selected its new managing directors, who in turn recommended their choice of sales managers. To assist with the selection process, Prudential employed an outside consulting firm to create a standardized evaluation form, which was then used nationwide for identifying and capturing leadership skills of sales managers. The selected managing directors completed these forms, and a representative from the human resources department and a regional vice president reviewed these forms.

Prudential selected Cantin to remain as a managing director and oversee the newly merged Chicago agency. Cantin completed an evaluation form for each of her eight sales managers, including plaintiff. Cantin did not fill in data on staff development and production for plaintiff as she did for the other sales managers evaluated. (Def. Ex. K and O).[1] Lorna Reeves ("Reeves"), a Human Resources Representative, and Lawrence Andrews ("Andrews"), Vice President of Sales, whose date of birth is August 2, 1954, reviewed Cantin's evaluations. Out of the eight candidates, Cantin recommended three individuals under the age of forty to remain as sales managers.[2] Plaintiff, who was 45 years old at the time, was not recommended.[3]

According to Prudential, Cantin's reasons for not selecting plaintiff were based on his production and sales development data and performance. From December 1997 through early 1999, Cantin states that she had counseled plaintiff about his management deficiencies and had weekly reviews with him along with her other sales managers. Cantin told plaintiff that his agents were not in the office early enough to do their jobs but that plaintiff did not want to address this problem. Cantin reported that she also received numerous complaints from plaintiff's agents that they were going to leave, that plaintiff failed to show up for joint work and to meet agents for appointments, and that she had discussions with plaintiff regarding these

---

[1] The form does reflect, however, that Cantin did not find that plaintiff exceeded expectations in any of the 10 categories. Cantin added a page of comments documenting some of her reservations about plaintiff. This was apparently not done for the other candidates. (Def. Ex. K and O.) Neither party has identified the persons who were selected or indicated whether their evaluation forms reflected better performance.

[2] Defendant cites to page 17 of the Cantin deposition and exhibit 2 of the Reeves deposition to support this fact. The latter is not included in defendant's appendix and the former does not support this statement. For the purposes of expediting this litigation because it was offered by defendant and goes towards establishing plaintiff's prima facie case, the court accepts this statement is true.

[3] One of the sales managers Prudential also demoted was 39 years old. (Def.'s Reply Mem. of Law in Support of its Mot. for Summary Judgment at p. 6.)

complaints. Cantin also advised plaintiff that he failed to train the new agents, leaving them unattended when he should have been observing and coaching them during role-playing, and that he failed to answer questions for new agents, leaving them to watch a training video.

In March 1999, Cantin and Reeves advised plaintiff of his nonselection both in person and in a letter dated March 26, 1999. The letter outlined the alternatives for plaintiff including separation or continued employment with Prudential in a different capacity. Plaintiff elected to accept Prudential's offer to remain as a career sales agent, signing a new contract dated May 3, 1999.

According to plaintiff, Prudential promised sales leads for its former sales managers who agreed to be demoted to career sales agents. Plaintiff dealt with a representative from Prudential's home office in Newark to obtain these sales leads. Many of plaintiff's sales leads were not usable because they included leads in a bordering state where plaintiff was not licensed to sell.

In the meantime, on June 18, 1999, in response to plaintiff's request to discuss why he was demoted, plaintiff met with Andrews and Valeda Huff, the Director of Human Resources. At this meeting, Andrews and Huff gave plaintiff the reasons for his demotion. Specifically, they mentioned that Cantin had seen plaintiff playing games on the computer, that he put in a video during a training class, that he allowed agents to practice their sales scripts before he came in and tested them, and that he did not supervise his agents closely enough. (Beard Dep. at pp. 121-22.) Finally, and disputed by Prudential, Andrews reported that Cantin "had indicated that the Chicago agency was going to concentrate on hiring agents form the college campuses . . . and

they wanted the management to reflect the younger agents [*sic*, ages][4] of those college kids so they could relate to them better and attract them." (*Id.* at 122-23) (This statement will be referred to herein as "the Cantin Statement.").

Around the same time, Prudential started a pilot program, creating the Manager of Financial Services ("MFS") position. A MFS had to recruit her or his own staff from new hires, who would be called Financial Service Associates ("FSAs"). Sales managers, on the other hand, were still responsible for new and veteran sales agents and had more marketing experience; however, the traditional sales manager position no longer exists. Chris Patterson ("Patterson"), whose date of birth is September 19, 1969, had been with Prudential since 1997 and was made a MFS in June 1999. At some point, Cantin announced that Patterson would be promoted into management. In October 1999, plaintiff resigned and accepted the position of agency manager for another company in Detroit, Michigan. He now earns about the same salary that he earned as a sales manager in Prudential's LSX agency.

## ANALYSIS

In Count I, plaintiff claims that Prudential removed him because of his age from the sales manager position and replaced him with a younger employee whose performance record was no better than plaintiff's work record, causing him to suffer loss in income as well as humiliation, injury to reputation and other damages. In Count II, plaintiff alleges that once plaintiff was demoted to the career special agent position, Prudential having promised to assist plaintiff with sales leads, did not fulfill that promise, forcing plaintiff to quit because he could not earn sufficient commissions and income; although not explicit, the court interprets this claim as one of

---

[4]The court inserts the word "ages" in order to make the sentence make sense.

7

constructive discharge based on age. Count III seeks to recover on the breach of the oral promise made by Crews in 1996 and/or 1997 that Prudential would promote plaintiff if he performed to expectations and received a citation. Defendant contends that none of these claims can survive a motion for summary judgment, on the age claims because plaintiff cannot show that he was performing up to Prudential's legitimate expectations, that he was replaced at all, or that Prudential's articulated basis for its employment decision was pretextual. Further, Prudential argues, plaintiff cannot show any evidence that he was treated differently from younger agents with regard to leads or assistance he received when he was not selected as a sales manager or that the provision of leads was in any way related to an agent's age. On the common law claim, Prudential argues that plaintiff cannot establish an enforceable contractual agreement for future promotion.

### A. Count I - The Demotion

The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age "with respect to his compensation, terms, conditions or privileges or employment, because of such individual's age." 29 U.S.C. §§ 623 and 631. Plaintiff may establish age discrimination through either direct or indirect proof. *Huff v. UARCO, Inc.*, 122 F.3d 374, 379 (7th Cir. 1997). "Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Id.*, citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).[5] The indirect method of proof is the

---

[5]The direct method of proof is not to be confused with direct evidence. "'Direct evidence' is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did." By contrast, "'[c]ircumstantial evidence' is proof of one or more facts from which you could find another fact. . . .'" 3 FED. JURY PRACTICE AND

8

familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *See Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 424 (7th Cir. 1989) (applying the *McDonnell Douglas* burden-shifting analysis in an ADEA case).

Plaintiff at the beginning of his brief cites the indirect method of proof and argues that he has met the prima facie elements of proof under the *McDonnell Douglas* burden-shifting analysis, citing *Collier v. The Budd Company*, 66 F.3d 886, 892 (7th Cir. 1995), an ADEA case in which the plaintiff proceeded under the indirect method of proof. (Pl.'s Mem. in Opp'n at p. 2.) He does point, however, to "direct evidence," the Cantin Statement, as evidence that Prudential discriminated against him, suggesting that he is also pursuing the direct method of proof of discriminatory intent, and cites *Alzona v. Mid-States Corporate Federal Credit Union*, No. 92 C 8244, 1995 WL 134767 (N.D. Ill. Mar. 28, 1995), an ADEA case in which the court analyzed both methods of proof.[6]

---

INSTRUCTIONS § 101.42 (West 2000). The Seventh Circuit in *Huff* outlined three types of circumstantial evidence of intentional discrimination under the direct proof method:

> 1) suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other evidence from which an inference of discriminatory intent might be drawn; 2) evidence that employees similarly situated to the plaintiff other than in the characteristic on which the employer is forbidden to base a difference in treatment (i.e. age, race, sex, etc.) received systematically better treatment; or 3) evidence that plaintiff was qualified for the job in question but was passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief or, a mere pretext for discrimination.

*Huff*, 122 F.3d at 380 (noting the third factor is substantially the same as the evidence required under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)).

[6]In particular, concerning plaintiff's age discrimination claim in *Alzona*, there were no such comments about plaintiff's age by the supervisor for the court to consider; rather, the court looked at the circumstantial evidence offered by plaintiff - the timing of the plaintiff's firing within days of her being entitled to a pension benefit and her replacement by a younger employee. *Id.* at *4.

Under the direct method of proof, plaintiff can survive summary judgment if he can produce sufficient evidence to permit a reasonable jury to conclude that he was demoted because of his age, by showing (a) either an acknowledgment of discriminatory intent by the defendant or its agents, or (b) circumstantial evidence that provides the basis for an inference of intentional discrimination. *Wold v. Fellows Corp.*, 987 F. Supp. 662, 665 (N.D. Ill. 1997), citing *Huff*, 122 F.3d at 380. Here, plaintiff proffers "smoking gun" evidence, the Cantin Statement, repeated to plaintiff during the meeting with Andrews and Huff concerning his demotion. Defendant responds that the statement is denied by everyone but plaintiff and that it is double hearsay. On summary judgment, however, plaintiff's version must be credited, and the statement is outside hearsay and admissible under Federal Rule of Evidence 801(d)(2)(D). *See Wold*, 987 F. Supp. at 666 (immediate supervisor's repetition of next level supervisor's "ageist" comment was not hearsay). This case is quite similar on the facts to the those in *Wold*, and the well-reasoned opinion of Judge Shadur in that case points indubitably to the conclusion that summary judgment must be denied here.

Under these circumstances, it is not necessary to proceed to the indirect *McDonnell Douglas* method of proof.

### B.    Count II - Constructive Discharge

"Establishing constructive discharge is a two-step process. First, a plaintiff needs to show that her working conditions were so intolerable that a reasonable person would have been compelled to resign. Second, the conditions must be intolerable because of unlawful discrimination." *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir.1996). Here, plaintiff relies on discriminatory treatment of him with respect to provision of sales leads to older agents. Because

10

plaintiff has proffered no evidence comparing his sales leads to those given younger employees from which an inference of discriminatory intent might be drawn, defendant is entitled to summary judgment on Count II.

## C.  Count III - Breach of Contract

In Count III, plaintiff complains that Prudential breached an oral agreement made with him in September or October of 1996, and reiterated in 1997 when he was offered the sales manager position in Chicago, that if he received a citation and had no more sexual harassment complaints, Prudential would promote him to a managing director position. In reliance on the promise, plaintiff moved to Chicago, accepted a sales manager position and earned the citation (presumably, he had no more sexual harassment complaints as well, although this is not stated), but rather than promote plaintiff to managing director, it demoted him to career sales agent. This claim can be quickly determined. Even if the oral promise was made as plaintiff asserts, a previous or even contemporaneous oral promise that would not render ambiguous the written agreement in October of 1997, would be inadmissible to alter the terms of the written agreement. *See Vitkauskas v. State Farm Mut. Auto. Ins. Co.*, 157 Ill. App. 3d 317, 321, 509 N.E.2d 1385, 1388 (1987) ("Evidence of prior oral agreements is inadmissible to vary, alter or contradict a written agreement which is complete, unambiguous, valid and unaffected by fraud, duress, mistake or illegibility. *World Ins. Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 329 N.E.2d 518. As to attempting to alter or rewrite a contract by extrinsic evidence, such is not permitted.") As stated above:

> Plaintiff signed a statement made on or about October 24, 1997 upon acceptance of the transfer in which he acknowledged that he would "be evaluated based on [his] performance versus other Field Directors for future opportunities" and that

11

> "the compensation plan did not represent a guarantee of employment now or in the future." (Beard Dep. Ex. 3.) Plaintiff knew that his contract could be terminated by Prudential at any time or that he could resign and quit at any time. (Beard Dep. at p. 12.) After the meeting in Newark, Prudential offered plaintiff a sales manager position.

There is no ambiguity in this writing commemorating plaintiff's understanding of his employment contract with Prudential. More fundamentally, employment in Illinois is at-will, unless there is a clear and definite promise for continued employment and adequate consideration therefor. *See Duldalao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 489, 505 N.E.2d 314, 318 (1987) (holding that under Illinois common law, employee handbook can create an employment contract). As defendant points out, plaintiff has not demonstrated that there was consideration for the oral contract, in that he gave up nothing other than a possible termination in accepting the offer. *See Smith v. Bd. of Educ. of Urbana Sch. Dist. 116*, 708 F.2d 258, 263-64 (7th Cir. 1983) (It is not enough that employee merely refrain from pursuing alternative employment opportunities.); *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1341 (N.D. Ill. 1996) (Employee must forego a real and favorable job from another employer or give up a secure position). Summary judgment will be granted on Count III.

## ORDER

For the reasons stated above, the court denies Prudential's motion for summary judgment [#13] on Count I and grants the motion on Counts II and III. This case will be called for status on April 23, 2002 at 9:30 a.m. The parties are directed to meet together in an effort to settle this case before that hearing.

ENTER: _/s/ Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 5, 2002